USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/3/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

M.K. and L.K. on behalf of C.K.,

                 Plaintiffs,

-against-

ARLINGTON CENTRAL SCHOOL DISTRICT,

                 Defendant.

---

No. 16 Civ. 05751 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiffs M.K. and L.K. on behalf of C.K. as the prevailing parties in the action against Defendant Arlington Central School District submit this motion for an award of statutory attorney's fees and costs pursuant to the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. § 1415(i)(3) and Federal Rules of Civil Procedure Rule 54(d)(2). For the following reasons, Plaintiffs' motion is GRANTED in part and DENIED in part.

## BACKGROUND

This is an action, commenced on July 26, 2016, for attorney's fees associated with the prosecution of an impartial hearing under IDEA and the successful cross-appeal in a New York State Education Department State Review Office appeal. ("Complaint," ECF No. 2.) Attached to the Complaint are the (1) March 22, 2016 decision from the Impartial Hearing Officer ("IHO"); (2) June 22, 2016 decision of the State Review Officer ("SRO"); (3) affirmation and billing records from Plaintiffs' IHO and SRO attorney Barbara Ebenstein; and (4) affidavits from

attorneys Gary Mayerson and Christina Thivierge. The circumstances leading to the action currently before the Court are described below.

On June 19, 2013, Defendant developed an Individualized Education Program ("IEP") for C.K., and C.K.'s parents enrolled C.K. in Defendant's Vail Farm Elementary School in September 2013. During the 2013 to 2014 school year, C.K. struggled with stress and anxiety and Defendant amended C.K.'s IEP four times with little or no improvement for C.K. over that time. C.K.'s parents rejected Defendant's June 2, 2014 IEP and, providing proper notice to Defendant, enrolled C.K. in a private special education school for the 2014 to 2015 school year. Plaintiffs filed an Impartial Hearing Complaint on March 12, 2015 for the reimbursement of private school tuition and fees for the 2014 to 2015 year. After a seven-day hearing spanning several months, the IHO ordered partial tuition reimbursement to Plaintiffs on March 22, 2016. Defendant appealed to the SRO and Plaintiffs filed a cross-appeal for full tuition reimbursement. On June 22, 2016, the SRO dismissed Defendant's appeal and sustained Plaintiffs' cross appeal for full reimbursement.

In the action currently before the Court, Plaintiffs seek attorney's fees for their attorney Barbara Ebenstein's work. Ebenstein, a solo practitioner, typically charges an hourly rate of $500 for IDEA matters. According to her records, Ebenstein worked 96 hours on the IHO hearing and 14.5 hours on the SRO appeal, resulting in a total of 110.5 hours for $55,250. (Compl. Ex. 3 ("Affirmation & Billing R."), ECF No. 2.) Additionally, Ebenstein travelled one hour each way to the location for the IHO hearing as well as a resolution session, and she also made a trip to C.K.'s private school to interview witnesses. (*Id.*) Travel for Plaintiffs' IHO and SRO proceedings, billed at a half rate of $250 per hour, amounted to $4,750. (*Id.*) Finally, costs for copying and shipping for the IHO and SRO hearings resulted in charges totaling $523.26.

(*Id.*) In total, Plaintiffs seek $60,523.26[1] in costs and attorney's fees for Ebenstein's work for the IHO and SRO hearings. (*Id.*)

Plaintiffs also request attorney's fees for Ebenstein's work in pursuit of this motion, which totaled $7,025 as of April 2, 2018. (Pls.' Reply p. 7, ECF No. 26.) This, combined with Ebenstein's costs and fees for the IHO and SRO hearings, amounts to $67,548.26.

## LEGAL STANDARD

IDEA "ensure[s] that children with disabilities . . . are guaranteed procedural safeguards with respect to the provision of a free appropriate public education." 20 U.S.C. § 1415(a). Under the statute, in any "action or proceeding brought under [IDEA]," courts have discretion to "award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). The Second Circuit has held any "action or proceeding" to include both administrative hearings and litigation before federal courts. *See A.R. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 75 (2d Cir. 2005). A "prevailing party" is one who receives actual relief on the merits of his claim which materially alters the legal relationship between him and the defendant "by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

Under IDEA, attorneys' fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). Attorneys' fees may be reduced if the amount of fees unreasonably exceeds the prevailing hourly rate in the community for "similar services by attorneys of reasonably comparable skill, reputation, and experience," or if the time billed and services

---

[1] The conclusion of Plaintiffs' Memorandum of Law in Support of Motion for Attorneys' Fees and Costs states that Ebenstein's fees, costs, and expenses totaled $60,000. (ECF No. 23.) However, after reviewing the entire Memorandum, it appears that Plaintiffs inadvertently excluded the $523.26 in costs.

3

furnished were excessive for the nature of the proceeding. 20 U.S.C. § 1415(i)(3)(F)(ii), (iii). The movant bears the burden of producing satisfactory evidence, along with the attorney's own affidavits, that the requested fee is appropriate. *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989).

To determine the amount of a reasonable fee, the Second Circuit has held that courts should start with the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 (2d Cir. 2008). "The reasonable hourly rate is the rate a paying client would be willing to pay . . . ."[2] *Id.* at 190. This determination requires Courts to consider all case-specific variables relevant to the reasonableness of attorneys' fees. *Id.* These variables include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 – 19 (5th Cir. 1974)).

---

[2] The court in *Arbor Hill* also identified the following factors to be considered in determining the amount a reasonable paying client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2008).

## ANALYSIS

Parties do not dispute that Plaintiffs were the prevailing party under IDEA. Therefore, what remains is for the Court to determine the reasonableness of the requested fees and costs.

### A. *Existence of contemporaneous time records*

Defendant first contends that the Court should deny Plaintiffs' motion because Plaintiffs have not submitted contemporaneous time records. Contemporaneous time records are a "mandatory requirement" for a motion for attorneys' fees. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983). These records should specify the date, hours expended, and the nature of the work completed. *Id.* at 1148. Plaintiffs have submitted contemporaneous time records early on in this action as part of Ebenstein's affirmation. (Affirmation & Billing R.) Those records specify the date, hours, and nature of the work. (*Id.*) Accordingly, Plaintiffs satisfied the contemporaneous time records requirement.

### B. *Retainer agreements and discounted rates*

Next, Defendant argues that the Court should only award attorney's fees in the flat sums Plaintiffs were required to pay their attorney pursuant to the retainer agreements which did not require Plaintiffs to pay an hourly fee. The retainer agreement for work related to the IHO required Plaintiffs to pay Ebenstein a $5,000 retainer to file the Impartial Hearing Complaint and to negotiate a settlement. (Rushfield Affirmation Ex. 2, ECF No. 24.) If no settlement was reached, Ebenstein was to be paid an additional $1,000 per day spent on the IHO hearing "as a discounted rate." (*Id.*) The retainer also specified that Ebenstein's typical hourly rate is $500. According to the retainer, Plaintiffs agreed that if they decided to pursue attorney's fees, they would "assist Ms. Ebenstein in obtaining such legal fees despite our discounted payment to her. We understand that our payments to her would then be reimburse to us to the extent recovered

but not more." (*Id.*) The SRO retainer agreement also required a $5,000 retainer and included identical language about Ebenstein's attorney's fees. (Rushfield Affirmation Ex. 3.) In the third retainer agreement, which governs Ebenstein's representation of Plaintiffs in the current action for attorney's fees, Plaintiffs agreed to pay her hourly rate of $500 for her work on a federal case for reimbursement. (Rushfield Affirmation Ex. 4.)

Plaintiffs are correct that each of the retainer agreements alerted them both that Ebenstein's typical hourly rate was $500 and that they were receiving a discounted rate for the IHO and SRO work. Defendant argues that any attempt to recover more than the discounted rate Ebenstein offered Plaintiffs is inappropriate. However, courts have regularly held that a plaintiff who agreed to pay a discounted rate in a retainer agreement is not precluded from seeking the attorney's customary rate on a motion for fees. *See Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989); *A.R. v. N.Y. City Dep't of Educ.*, No. 12-CV-7144, 2014 WL 5462465, at *8 n.6 (S.D.N.Y. Oct. 28, 2014) ("An initial discounted rate for a civil rights plaintiff does not create a ceiling for a later award."); *Trs. of Bricklayers and Allier Craftworkers Local 5 v. Helmer-Cronin Constr., Inc.*, No. 03-CV-748(MDF), 2005 WL 3789085, at *4 n.1 (S.D.N.Y. Oct. 24, 2005) ("Although the Trustees were charged less than $250 per hour, they are entitled to reasonable attorney's fees at the prevailing market rate."); *Fink v. City of New York*, 154 F. Supp. 2d 403, 407 (E.D.N.Y. 2001) ("It is quite clear from the retainer agreement, however, that [Plaintiff]'s attorneys did not believe that the $150.00 that they were charging him was a reasonable rate; rather, they specifically referred to it as a reduced rate . . . . If anything, it is their customary rate and not the reduced rate that they charged to Fink that could be considered the market rate that they charge to their clients."). Accordingly, Defendant's contention that any

6

award of attorney's fees to Plaintiffs is limited to the discounted amount of attorneys' fees they were required to pay under the retainer agreements is without merit.

### C. Reasonableness of Ebenstein's hourly rate

According to Defendant, $500 is not a reasonable rate for Ebenstein's services and that her rate should be $350 per hour for the administrative proceedings and $250 per hour for work on the fee application.[3] Defendants argue that the attorneys Plaintiffs offers as having comparable rates are not comparable to Ebenstein because they are not solo practitioners.

Ebenstein has been practicing law since 1990. (Compl. Ex. 3 ¶ 2.) She maintains a private law practice representing parents of students with disabilities in IDEA cases and related matters. (Id.) She is also an adjunct professor at New York University where she teaches a graduate course in education law. (Id. ¶ 3.) In September 2003, New York State Department of Education certified Ebenstein as an impartial hearing officer to hear special education cases. (Id. ¶ 4.) Ebenstein also has conducted numerous CLE programs and written several publications on education law. (Id. ¶ 5, pp. 6 – 16.) Clearly, Ebenstein is an attorney with substantial experience in education law and IDEA cases.

A supporter of Plaintiffs' fee request, attorney Gary Mayerson, declares that his standard hourly rate for clients is $650 per hour for direct time and $700 per hour for supervisory time. (Compl. Ex. 4.) Christina Thivierge, another supporter and a 2000 law school graduate with less experience than Ebenstein, declares that her hourly rate of $425 accurately reflects the rates within the Southern District of New York for attorneys with her level of experience. (Id.) Steven Goldstein, a practicing attorney since 1996 with IDEA experience, declares that he charges $450 per hour for IDEA matters and that he believes $500 per hour is a reasonable rate

---

[3] Defendants argue that Plaintiffs' administrative proceedings were to resolve a straightforward IDEA matter.

for Ebenstein's services. (Mem. of Law in Supp. Ex. 1, ECF No. 23.) He also states that he believes, based on his personal knowledge of Ebenstein and on conversations with colleges, that "Ms. Ebenstein enjoys a reputation in the education law community as an effective, knowledgeable, and honorable advocate and litigator." (*Id.*)

In addition to the evidence provided by the Plaintiffs, the Court also considers the *Arbor Hill* factors in determining the reasonableness of Ebenstein's hourly rate. First, Ebenstein's typical hourly rate is $500 and not a figure merely created for this litigation, as made clear in the retainer agreements. (*See* Rushfield Affirmation Exs. 2 – 4.) Second, the IHO hearing, lasting seven days and resulting in a fifty-six-page opinion and an SRO appeal, involved multiple legal issues and appears to have been a significant undertaking for all attorneys, including Ebenstein.[4] Third, Ebenstein has established that she is a well-respected attorney with substantial experience in IDEA cases. (Compl. Exs. 3 – 4); (Mem. of Law in Supp., Ex. 1.) Fourth, through her work, Ebenstein was able to attain a favorable result for her client, reimbursement of private school tuition expenses for the 2014 to 2015 school year.

However, Defendants argue that because Ebenstein is a solo practitioner and does not have the overhead of larger firms, her rate should be lower than $500 per hour. The Second Circuit has rejected this argument. *McDonald v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 98 n.6 (2d Cir. 2006) ("[D]istrict courts should not treat an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate."); *see Menghi v. Hart*, 745 F. Supp. 2d 89, 112 n.6 (E.D.N.Y. 2010). Defendants also cite to two cases to support its proposition that $500 is an unreasonable rate for Ebenstein's services, but these

---

[4] Other cases with IHO hearings of similar length have presented difficult legal issues and appear to be substantial undertakings for the attorneys involved. *See M.H. v. N.Y. City Dep't of Educ.*, 685 F.3d 217, 235 (2d Cir. 2012); *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 111 (2d Cir. 2007), *K.R. v. N.Y. City Dep't of Educ.*, 107 F. Supp. 3d 295, 304 (S.D.N.Y. 2015).

cases are easily distinguishable from the matter currently before the Court. In *K.L. v. Warwrick Central. School District*, the court reduced the proposed hourly rate from $475 to $250 for attorneys in an IDEA action because, in part, that case resulted in an early settlement. No. 12-CV-6313(DLC), 2013 WL 4766339, at *8 (S.D.N.Y. Sept. 5, 2013). The case currently before the Court did not result in early settlement but involved a long IHO hearing process and a SRO appeal. *K.F. v. New York City Department of Education* is similarly distinguishable from this matter. In *K.F.*, the court awarded the attorneys an hourly rate of $375. No. 10-CV-5465(PKC), 2011 WL 3586142, at *3 (S.D.N.Y. Aug. 10, 2011). However, those attorneys did not share Ebenstein's significant level of experience in IDEA matters.[5] *Id.* Other cases indicate that $450 is a reasonable hourly rate for an attorney with Ebenstein's level of experience. *See Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 262 – 63 (E.D.N.Y. Aug. 4, 2014) (holding that a solo practitioner attorney with thirty-three years of experience trying approximately 500 employment discrimination cases was entitled to $425 per hour, a rate in the upper range of attorneys' fees for experienced solo practitioners); *Alicea v. City of New York*, 272 F. Supp. 3d 603, 609 – 10 (S.D.N.Y. 2017) (noting that two courts in 2014 found that a reasonable rate for a civil rights attorney with twenty-seven years of experience for cases resolved through settlement was $450).

After reviewing the evidence provided by the parties, decisions in other cases, and analyzing this case under the *Arbor Hill* factors, the Court determines that $450 is the market rate and a reasonable rate for a solo practitioner with Ebenstein's then twenty-five years of experience trying special education cases. Although Ebenstein has impressive credentials and is obviously a very experienced attorney in IDEA matters, $500 is slightly above the reasonable

---

[5] Whereas Ebenstein has been litigating IDEA matters since the early 1990s and serves as an impartial hearing officer for special education issues, the attorney with the most experience in IDEA matters in *K.F.* had authored over sixty closing briefs for IDEA cases. *K.F. v. N.Y. City Dep't of Educ.*, No. 10-CV-5465(PKC), 2011 WL 3586142, at *3 (S.D.N.Y. Aug. 10, 2011).

range of fees for solo practitioners in the Southern District of New York. An hourly rate of $450 is reasonable. Attorney's fees for Ebenstein's work on the IHO and SRO proceedings and this action will be calculated at $450 per hour and her travel at $225 per hour.

### D. *Reasonableness of Ebenstein's billing practices and entries*

Defendants next argue that Ebenstein engaged in overbilling in the form of block billing, vague entries, and billing for time spent on administrative tasks.

Ebenstein's time entries do not contain an unreasonable use of block billing. The Second Circuit has held that, while disfavored, block billing[6] is not *per se* unreasonable. *Hines v. City of Albany*, No. 14-CV-2299, 2015 WL 3479820, at *3 (2d Cir. June 3, 2015) (summary order) (citing *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 266 (2d Cir. 2014). For fee applications, block billing makes it difficult for the Court to determine the reasonableness of the time spent on each task, and "is most problematic where large amounts of time (*e.g.*, five hours or more) are block billed." *Beastie Boys v. Monster Energy Co.*, No. 12-CV-6065(PAE), 2015 WL 3823924, at *18 (S.D.N.Y. June 15, 2015); *see Sheet Metal Workers' Nat'l Pension Fund v. Coverex Corp. Risk Sols.*, No. 09-CV-0121(SJF)(ARL), 2015 WL 3444896, at *12 (E.D.N.Y. May 28, 2015). Here, Ebenstein's "blocks" of time entries are not especially large; they do not exceed four hours except for the days of the IHO hearing. Additionally, Ebenstein's descriptions are sufficiently detailed to allow the Court to determine the reasonableness of time spent on each task. *See U.S., ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 12-CV-275(DLC), 2015 WL 1726474, at *3 (S.D.N.Y. Apr. 15, 2015) ("The use of 'block billing' here is perfectly reasonable; the specific tasks in each 'block' are described with sufficient detail and clarity to confirm 'the reasonableness of the work performed.' " (quoting *Barclays Capital Inc. v.*

---

[6] Block billing is the "grouping of multiple tasks into a single billing entry." *Hines v. City of Albany*, 613 F. App'x 52, 55 (2d Cir. 2015).

*Theflyonthewall.com*, No. 06-CV-4908(DLC), 2010 WL 2640095, at *4 (S.D.N.Y. June 30, 2010)). The descriptions for each time entry in the Affirmation and Billing Records make clear the specific tasks Ebenstein was working on, and therefore her use of block billing is reasonable.

Additionally, Ebenstein's descriptions are not overly vague. Applications for attorneys' fees should be supported by contemporaneous time records containing specific descriptions of the work performed. *Conn. Hosp. Ass'n v. O'Neill*, 891 F. Supp. 687, 690 (D. Conn. 1994). In *Connecticut Hospital Association*, the court held that time descriptions indicating that the attorney had a call with a person without specifying the subject of the call were too vague. *Id.* at 690 – 91. Similarly, the court in *Smart SMR of N.Y., Inc. v. Zoning Comm'n of Stratford* found cursory entries such as "document review" and "research" to be vague and insufficient descriptions for the court to determine the reasonableness of fees. 9 F. Supp. 2d 143, 153 (D. Conn. 1998). Unlike the time descriptions in *Connecticut Hospital Association* and *Smart SMR*, Ebenstein's time descriptions are specific and provide the Court with sufficient information to determine the reasonableness of the time recorded. *See Grievson v. Rochester Psychiatric Ctr.*, 746 F. Supp. 2d 454, 465 (W.D.N.Y. 2010) ("Individual entries that include only vague and generic descriptions of the work performed do not provide an adequate basis upon which to evaluate the reasonableness of the time spent."). Here, the entries specify the subject of any correspondence and provide details about the content of written work.

Finally, the Court finds no merit to Defendant's argument that Ebenstein, as a solo practitioner without other paralegal or administrative assistance, billed Plaintiffs for administrative tasks or tasks which could have been completed by an attorney with less experience. As a threshold matter, a lack of staff is not enough to show that a solo practitioner attorney billed for non-legal tasks. *See Silver v. Law Offices Howard Lee Schiff, P.C.*, No. 09-

CV-912(PCD), 2010 WL 5140851, at *3 (D. Conn. Dec. 16, 2010). Defendant lists functions it deems to be solely clerical or beneath Ebenstein's level of expertise. However, the Court disagrees that these tasks are administrative. The entries flagged by Defendant include the creating chronologies, corresponding with Plaintiffs, and drafting and editing legal work. These and other tasks described in the Affirmation and Billing Records are common responsibilities for attorneys. There is no evidence to indicate that Ebenstein included non-legal functions in her billing. *Compare Palmer v. Midland Funding, LLC*, No. 14-CV-691(JCH), 2015 WL 1897457, at *2 (D. Conn. Apr. 27, 2015) ("[W]hile [the attorney] is a solo practitioner, there is no evidence indicating that she included non-legal functions in her billing records."), *with Frederic v. Commonwealth Fin. Sys., Inc.*, No. 15-CV-03811(PKC), 2016 WL 1383488, at *4 (E.D.N.Y. Apr. 7, 2016) (stating that a solo practitioner cannot bill clients at the attorney's hourly rate for clerical tasks such as preparing envelopes and uploading documents to ECF). The Affirmation and Billing Records reflect substantive descriptions of Ebenstein's work on law-related functions

### *E. Ebenstein's work on attorney's fee application*

It is not unusual for an attorney to use other counsel in an attorney's fee dispute and still recover fees for her work on the attorney's fee dispute. *See, e.g., Donovan v. CSEA Local Union 1000*, 784 F.2d 98, 106 (2d Cir. 1986) (awarding attorneys' fees to the attorney for work on the attorneys' fees application); *U.S. ex rel. ATC Distribution Grp., Inc. v. Ready-Built Transmissions, Inc.*, No. 03-CV-2150(GWG), 2007 WL 2522638, at *6 (S.D.N.Y. Sept. 7, 2007) (granting attorneys' fees for work in preparing fee application even where the attorney used other counsel for the fee application) (citing cases).

Plaintiffs state that Ebenstein's fees and costs in connection with this motion total $7,025 as of April 2, 2018 and cite to the Affirmation and Billing Records as well as the $400 case

12

opening fee for support. (Pls.' Reply p. 7.) However, the Affirmation and Billing Records only account for 11.25 hours Ebenstein has spent on this fee application. At Ebenstein's standard hourly rate, reduced to the reasonable rate of $450 for the purposes of this motion, this would amount to $5,062.50. As for the $400 case opening fee, there is no indication that Ebenstein paid that fee. The Complaint and the motion currently before the Court were filed not by Ebenstein but by the counsel she employed to assist her in Plaintiffs' attorney's fee application. Additionally, no case opening fee for this matter is reflected in Ebenstein's Affirmation and Billing Records. Because Plaintiffs have not provided any contemporaneous time records or records of cost to account for more than 11.25 hours spent by Ebenstein on this matter, Plaintiffs are only entitled to recover 11.25 hours for Ebenstein's time spent on the attorney's fee application itself. Eleven and one quarter hours is a reasonable amount of time for work on a standard attorney's fee application. *See Robinson v. City of New York*, No. 05-CV-9545(GEL), 2009 WL 3109846, at *13 (S.D.N.Y. Sept. 29, 2009) (holding that 345 hours for fee application was excessive for a fee application that was not novel or complex and reducing those hours by 40%). At the reasonable hourly rate of $450, Plaintiffs are entitled to $ 5,062.50 for Ebenstein's work on this action.

### *F. Ebenstein's work relating to the resolution session*

IDEA provides that "[a]ttorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action." 20 U.S.C. § 1415(i)(3)(D)(ii). This includes attorney work for resolution sessions. *See D.D. ex rel. Davis v. District of Columbia*, 470 F. Supp. 2d 1, 2 (D.D.C. 2007) ("It is undisputed that attorneys' fees for time actually spent at a resolution session pursuant to 20 U.S.C. § 1415(f)(1)(B)(i) generally are not compensable under the IDEIA.") Ebenstein billed Plaintiffs

for one hour on March 17, 2015 which, in addition to work relating to the IHO, included receipt of the "District's invitation to a resolution meeting." She also billed for one hour of attendance at the resolution session on April 6, 2015 and two hours for travel to and from the resolution session at half her hourly rate. Because Plaintiffs may not be awarded attorneys' fees for work related to resolution sessions, the Court reduces Ebenstein's time billed at $450 per hour by one and one-half hours and her travel time billed at $225 by two hours.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for attorney's fees is GRANTED in part and DENIED in part. Plaintiffs' counsel Barbara Ebenstein is entitled to recover $58,460.76[7] as reasonable attorney's fees and costs. Said funds are to be made payable to the Law Office of Barbara J. Ebenstein. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 22 and to terminate the action.

Dated: January 3, 2019
       White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

---

[7] Attorney's fees and costs are determined as follows: The hours Ebenstein spent on work for and travel to and from the resolution hearing are excluded. 109 hours spent on the IHO and SRO proceedings and 11.25 hours spent on this application, billed at an hourly rate of $450, total $54,112.50. 17 hours for travel, billed at an hourly rate of $225, total $3,825.00. Costs amount to $ 523.26.